IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| MATTHEW CLARK KRAMER, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 22-cv-01085-LKG |
| | ) | |
| v. | ) | Dated:  September 22, 2023 |
| | ) | |
| GROUND ZERO CRYPTO, LLC, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

### MEMORANDUM OPINION

**I.     INTRODUCTION**

In this civil action, Plaintiff, Matthew Clark Kramer, alleges that the Defendants, Ground Zero Crypto, LLC ("Ground Zero"), Peter Campbell, Joseph Bergvinson, Henry He, Christopher Neil Davenport and Matthew DeLorenzo, breached their respective fiduciary duties to a business venture known as "SaucerSwap," by seizing certain assets of the business venture for their personal use and benefit.  *See generally*, ECF No. 1.  Defendants have moved to dismiss certain Defendants and Plaintiff's conversion claim, pursuant to Fed. R. Civ. P. (b)(2) and (b)(6).  ECF Nos. 22 and 22–1.  The motion is fully briefed.  ECF Nos. 1, 22, 22–1, 23 and 24.  No hearing is necessary to resolve the motion.  L.R. 105.6 (D. Md. 2023).  For the reasons that follow, the Court: (1) **GRANTS-in-PART** and **DENIES-in-PART** the Defendants' motion to dismiss; (2) **DISMISSES** Defendants Campbell, Bergvinson, He and DeLorenzo and **DISMISSES** Plaintiff's conversion claim as it relates to Plaintiff's "other intellectual property."

**II.    FACTUAL AND PROCEDURAL BACKGROUND**

   **A.  Factual Background**

This civil action involves a dispute over certain assets of a business venture that the parties established in 2021.  *See generally*, ECF No. 1.  Specifically, Plaintiff, Matthew Clark Kramer, alleges that the Defendants, Ground Zero, Peter Campbell, Joseph Bergvinson, Henry He, Christopher Neil Davenport and Matthew DeLorenzo, breached their respective fiduciary

duties to the business venture by seizing certain assets of the business venture for their personal use and benefit. *Id.* In this regard, Plaintiff alleges the following claims in the complaint: (1) Breach of Fiduciary Duty (Count I); Conversion (Count II); and Quantum Meruit/Unjust Enrichment (Count III). *Id.* As relief, Plaintiff seeks to recover monetary damages and other costs from the Defendants. *Id.* at Prayer for Relief.

The Parties

Plaintiff Matthew Clark Kramer is a resident of Utah. ECF No. 1 at ¶ 1.

Defendant Ground Zero Crypto, LLC is a Maryland limited liability company, with its principal place of business located in Finksburg, Maryland. *Id.* at ¶ 2.

Defendant Peter Campbell is a resident of Maine. *Id.* at ¶ 3.

Defendant Joseph Bergvinson is a resident of the province of British Columbia, Canada. *Id.* at ¶ 4.

Defendant Henry He is a resident of New York. *Id.* at ¶ 5.

Defendant Christopher Neil Davenport is a resident of Maryland. *Id.* at ¶ 6.

Defendant Matthew DeLorenzo is a resident of North Carolina. *Id.* at ¶ 7. Defendants Peter Campbell, Joseph Bergvinson, Henry He and Matthew DeLorenzo are referred to herein collectively as (the "non-Maryland Defendants").

The Creation Of SaucerSwap

Plaintiff alleges that, in August 2021, he conceived and developed a business venture "involving an automated market maker protocol to facilitate [cryptocurrency] token swaps using smart contracts and tokens," known as "SaucerSwap." *Id.* at ¶¶ 1, 11–12. Plaintiff also alleges that he worked on the SaucerSwap business venture, by developing basic branding concepts, including the SaucerSwap name and initial logo design, in addition to creating social media accounts on Reddit, Twitter and Instagram relating to the business venture. *Id.* at ¶¶ 11, 14–17.

Between October and December 2021, Plaintiff and his brother, Michael Kramer, contacted other individuals about joining the SaucerSwap business venture, including Defendants Peter Campbell, Joseph Bergvinson, Henry He, Christopher Neil Davenport and

2

Matthew DeLorenzo. *Id.* at ¶¶ 3–7, 18–19, 21, 25. Plaintiff alleges that these seven members of the SaucerSwap business venture agreed on the division of their respective ownership interests in the business. *Id.* at ¶ 25.

In this regard, Plaintiff alleges that he received a 25% interest in the SaucerSwap business venture; Michael Kramer received a 15% interest in the SaucerSwap business venture; Defendant Peter Campbell received a 27% interest in the SaucerSwap business venture; Defendant Joseph Bergvinson received a 22% interest in the SaucerSwap business venture; Defendant Henry He received a 5% interest in the SaucerSwap business venture; Defendant Christopher Neil Davenport received a 3% interest in the SaucerSwap business venture; and Defendant Matthew DeLorenzo received a 3% interest in the SaucerSwap business venture. *Id.* Plaintiff further alleges that the members of the SaucerSwap business venture also agreed on their individual allocation of the total 240,00,000 SaucerSwap tokens. *Id.* at ¶ 26. In this regard, Plaintiff alleges that his allocation was to be at least 3.34% of the so-called "SAUCE" tokens, totaling at least 8,016,000 tokens valued in excess of $2.2 million. *Id.*

On February 10, 2022, the seven SaucerSwap business venture members formed a limited liability company known as Planck Epoch, LLC, through which they intended to operate SaucerSwap. *Id.* at ¶ 28. Plaintiff alleges that the SaucerSwap members agreed to take the SaucerSwap business venture "live" on February 22, 2022, with SaucerSwap's first NFT investment public offering.[1] *Id.* Plaintiff alleges, however, that, on February 18, 2022, Defendant Christopher Neil Davenport formed Ground Zero and registered the "SaucerSwap" trade name with the Maryland Department of Assessments and Taxation without Plaintiff's knowledge. *Id.* at ¶¶ 2, 29.

On February 20, 2022, Plaintiff and Michael Kramer were ousted from the SaucerSwap business venture by the other members of the business venture. *Id.* at ¶¶ 30–31. Plaintiff alleges that the other members of the SaucerSwap business venture then attempted to lock him

---

[1] An NFT, or "non-fungible token," is a digital asset that can come in the form of art, music, in-game items, or video that has its ownership authenticated and that is bought and sold online, frequently with cryptocurrency. *See* Mark Cuban, *non-fungible token*, ENCYCLOPEDIA BRITANNICA (last updated Aug. 23, 2023), https://www.britannica.com/topic/non-fungible-token.

out of the SaucerSwap Twitter, Instagram and Discord accounts, and the SaucerSwap website. *Id.* In this regard, Plaintiff alleges that the remaining SaucerSwap members redirected the SaucerSwap website to a new URL, which contains certain animations that he paid for, as well as the proprietary business plan and intellectual property that he conceptualized and developed. *Id.* at ¶¶ 33–34.

On February 22, 2022, the remaining members of the SaucerSwap business venture completed the initial SaucerSwap NFT sale. *Id.* at ¶ 36.

### B. Procedural History

Plaintiff commenced this matter on May 4, 2022. ECF No. 1. On October 4, 2022, Defendants filed a motion to dismiss the complaint, and a memorandum in support thereof, pursuant to Fed. R. Civ. P. 12(b)(2) and (b)(6). ECF Nos. 22 and 22-1.

On October 25, 2022, Plaintiff filed a response in opposition to the Defendants' motion. ECF No. 23. On November 8, 2022, Defendants filed a reply brief. ECF. No. 24.

The Defendants' motion having been fully briefed, the Court resolves the pending motion to dismiss.

## III. LEGAL STANDARDS

### A. Fed. R. Civ. P. 12(b)(2) And Personal Jurisdiction

A motion to dismiss for lack of personal jurisdiction, brought pursuant to Fed. R. Civ. P. 12(b)(2), "raises an issue for the [C]ourt to resolve, generally as a preliminary matter." *Grayson v. Anderson*, 816 F.3d 262, 267 (4th Cir. 2016). The burden is "on the plaintiff ultimately to prove the existence of a ground for jurisdiction by a preponderance of the evidence." *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989). To do so, a plaintiff need only make "a *prima facie* showing of personal jurisdiction to survive the jurisdictional challenge." *Grayson*, 816 F.3d at 268. When deciding a motion brought pursuant to Fed. R. Civ. P. 12(b)(2), the Court may "rule solely on the basis of motion papers, supporting legal memoranda, affidavits, and the allegations in the complaint." *State v. Exxon Mobil Corp.*, 406 F. Supp. 3d 420, 437 (D. Md. 2019) (citations omitted). And so, the Court must consider all disputed facts and make reasonable inferences in favor of the plaintiff in determining whether the plaintiff has made the requisite showing that the Court possesses personal jurisdiction over a defendant. *See Carefirst of Md.,*

4

*Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 396 (4th Cir. 2003).

Under Fed. R. Civ. P. 4(k)(1)(A), this Court may exercise personal jurisdiction over a defendant in the manner provided by state law. *Id.* The Court may exercise either general jurisdiction—arising from a defendant's continuous and systematic contacts with the forum state—or specific jurisdiction—arising from an "affiliation between the forum and the underlying controversy." *Ark. Nursing Home Acquisition, LLC v. CFG Cmty. Bank*, 460 F. Supp. 3d 621, 639 (D. Md. 2020) (quoting *Carefirst of Md.*, 334 F.3d at 397). For the Court to assert personal jurisdiction over a non-Maryland resident defendant, two conditions must be satisfied: (1) the exercise of jurisdiction must be authorized under the state's long-arm statute and (2) the exercise of jurisdiction must comport with the due process requirements of the Fourteenth Amendment. *Carefirst of Md.*, 334 F.3d at 396. In this regard, Maryland's long-arm statute limits specific personal jurisdiction to cases where the cause of action "aris[es] from any act enumerated" in the statute itself. Md. Code Ann., Cts. & Jud. Proc. § 6–103(a). And so, the Court may exercise specific personal jurisdiction over a person, who acting directly or through an agent, among other things:

> (1) Transacts any business or performs any character of work or service in the State; . . .
>
> (3) Causes tortious injury in the State by an act or omission in the State; [or]
>
> (4) Causes tortious injury in the State or outside the State by an act or omission outside the State if he regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from goods, food, services, or manufactured products used or consumed in the State . . . .

*Id.* at § 6–103(b).

To determine whether specific personal jurisdiction has been established, the Court considers: "(1) the extent to which the defendant has purposefully availed itself of the privilege of conducting activities in the state; (2) whether the plaintiffs' claims arise out of those activities directed at the state; and (3) whether the exercise of personal jurisdiction would be constitutionally 'reasonable.'" *Carefirst of Md.*, 334 F.3d at 397. In this regard, the Fourth Circuit has recognized that one factor that indicates "purposeful availment" is whether the defendant "reached into the forum state to solicit or initiate business." *Ark. Nursing Home*

5

*Acquisition*, 460 F. Supp. 3d at 639–40 (quoting *Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 278 (4th Cir. 2009) (cleaned up)).

Courts in this Circuit have recognized, however, that "[p]ersonal jurisdiction over a limited liability company does not automatically extend to its members." *Mountain Funding, LLC v. Blackwater Crossing*, No. 3:05CV513–MU, 2006 WL 1582403, at *2 (W.D.N.C. June 5, 2006). And so, "there [must] be some act by which [the] defendant purposely avails itself of the privileges of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *Hansen v. Denkla*, 357 U.S. 235, 253 (1958). In addition, a defendant must also "have certain minimum contacts [with the forum state] . . . such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice," to satisfy due process concerns. *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal quotation marks omitted).

### B. Fed. R. Civ. P. 12(b)(6)

To survive a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), a complaint must allege enough facts to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible when "the plaintiff pleads factual content that allows the [C]ourt to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). When evaluating the sufficiency of a plaintiff's claims under Fed. R. Civ. P. 12(b)(6), the Court accepts the factual allegations in the complaint as true and construes them in the light most favorable to the plaintiff. *Nemet Chevrolet*, 591 F.3d at 253; *Lambeth v. Bd. of Comm'rs of Davidson Cty.*, 407 F.3d 266, 268 (4th Cir. 2005) (citations omitted). But, the complaint must contain more than "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement . . . ." *Nemet Chevrolet*, 591 F.3d at 255. And so, the Court should grant a motion to dismiss for failure to state a claim if "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *GE Inv. Private Placement Partners II, L.P. v. Parker,* 247 F.3d 543, 548 (4th Cir. 2001) (quoting *H.J. Inc. v. Nw. Bell Tel. Co.,* 492 U.S. 229, 249-50 (1989)).

### C. Conversion And Relevant Utah Law

Lastly, under Utah law, "[a] conversion is an act of willful interference with a chattel, done without lawful justification by which the person entitled thereto is deprived of its use and possession." *Allred v. Hinkley*, 328 P.2d 726, 728 (Utah 1958); *see also Phillips v. Utah State Credit Union*, 811 P.2d 174, 179 (Utah 1991). As "[c]onversion is concerned with possession, not title," 18 Am. Jur. 2d *Conversion* § 75 (1985), "a party alleging conversion must show that he or she is entitled to *immediate* possession of the property at the time of the alleged conversion." *Fibro Trust, Inc. v. Brahman Fin., Inc.*, 974 P.2d 288, 296 (Utah 1999) (citing *Benton v. Utah Div. of State Lands & Forestry*, 709 P.2d 362, 365 (Utah 1985) (emphasis in original)).

Relevant to this dispute, the United States District Court for the District of Utah has held that Utah law does not permit a conversion claim for intangible intellectual property. *Margae, Inc. v. Clear Link Techs., LLC*, 620 F. Supp. 2d 1284, 1287 (D. Utah 2009). The district court has, however, distinguished intangible intellectual property, such as techniques and information, from web pages, which the district court has held to be tangible property and, thus, subject to a conversion claim under Utah law. *Id.* at 1287–88.

## IV.   ANALYSIS

Defendants have moved to dismiss the non-Maryland Defendants in this civil action, pursuant to Fed. R. Civ P. 12(b)(2), upon the grounds that the Court lacks personal jurisdiction over these Defendants. ECF No. 22 at 1. Defendants also seek to dismiss Plaintiff's conversion claim, pursuant to Fed. R. Civ. P. 12(b)(6), upon the grounds that Utah law applies to this claim and Plaintiff cannot bring a conversion claim for intangible property under Utah law. *Id.*; ECF No. 22–1 at 5.

Plaintiff counters in his response and opposition that the Court possesses personal jurisdiction over the non-Maryland Defendants, because Section 6–103(b)(3) of the Maryland long-arm statute allows this Court to exercise personal jurisdiction over a person who "[c]auses tortious injury in the State by an act or omission in the State." ECF No. 23 at 3. Plaintiff also argues that he states a plausible conversion claim in the complaint, because the SaucerSwap logo, trade name, social media accounts and website can be the subject of a conversion

7

claim under Utah law.  *Id.* at 5–6.  And so, Plaintiff requests that the Court deny the Defendants' motion to dismiss.  *Id.* at 6.

For the reasons that follow, Plaintiff has not shown that the Court possesses personal jurisdiction over the non-Maryland Defendants in this action.  A careful reading of the complaint shows, however, that Plaintiff states plausible claims for conversion related to the SaucerSwap website, social media accounts, trade name and logo under Utah law.  But Plaintiff fails to state a plausible conversion claim related to his "other intellectual property."  And so, the Court: (1) GRANTS-in-PART and DENIES-in-PART the Defendants' motion to dismiss; (2) DISMISSES Defendants Campbell, Bergvinson, He and DeLorenzo from this action and DISMISSES Plaintiff's conversion claim related to Plaintiff's "other intellectual property."

### A. The Court Lacks Personal Jurisdiction Over Defendants Campbell, Bergvinson, He And DeLorenzo

As an initial matter, Defendants persuasively argue that the Court lacks personal jurisdiction over the non-Maryland Defendants in this case.[2]  Two conditions must be satisfied for this Court to exercise personal jurisdiction over the non-Maryland Defendants: (1) the exercise of personal jurisdiction must be authorized under Maryland's long-arm statute and (2) the exercise of personal jurisdiction must comport with the due process requirements of the Fourteenth Amendment.  *Carefirst of Md.*, 334 F.3d at 396.  In this regard, Maryland's long-arm statute provides, in relevant part, the Court may exercise personal jurisdiction over a person, who acting directly or through an agent:

> (1) Transacts any business or performs any character of work or service in the State; . . .
>
> (3) Causes tortious injury in the State by an act or omission in the State; [or]
>
> (4) Causes tortious injury in the State or outside the State by an act or omission outside the State if he regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from goods, food, services, or manufactured products used or consumed in the State . . . .

---

[2] It is undisputed that Defendants Campbell, Bergvinson, He and DeLorenzo do not reside in the State of Maryland.  ECF No. 1 at ¶¶ 3–5, 7; ECF No. 22–1 at 2.

Md. Code Ann., Cts. & Jud. Proc. § 6–103(b).

Plaintiff has not shown that the Court may exercise personal jurisdiction over the non-Maryland Defendants in this case under the Maryland long-arm statute for two reasons. First, the Court's exercise of personal jurisdiction pursuant to Section 6-103(b)(1) of the Maryland long-arm statute is not appropriate in this case. Plaintiff argues that the Court may exercise personal jurisdiction over the non-Maryland Defendants under Section 6–103(b)(3) of the Maryland long-arm statute, because this provision allows the Court to exercise personal jurisdiction over a person, who acting directly or through an agent, "causes tortious injury in the State by an act or omission in the State." Md. Code Ann., Cts. & Jud. Proc. § 6–103(b)(3). But to rely upon this portion of the Maryland long-arm statute, Plaintiff must show that both the tortious injury and the tortious act alleged in this case occurred in the State of Maryland. *See GiveForward, Inc. v. Hodges*, No. JFM–13–1891, 2014 WL 2159322, at *5 (D. Md. May 22, 2014).

Plaintiff cannot make such a showing, because the complaint makes clear that the alleged tortious acts and injuries related to the non-Maryland Defendants did not occur in Maryland. In the complaint, Plaintiff alleges that the non-Maryland Defendants ousted him and Michael Kramer from the SaucerSwap business venture on February 20, 2022, and that the non-Maryland Defendants also attempted to lock him out of the SaucerSwap Twitter, Instagram and Discord accounts, and the SaucerSwap website. ECF No. 1 at ¶¶ 33–34. But Plaintiff does not allege that any of this tortious conduct occurred in the State of Maryland. ECF No. 22–1 at 4; ECF No. 24 at 2–3; *see generally*, ECF No. 1.

The allegations in the complaint also make clear that the alleged tortious injury occurred in Utah, where Plaintiff resides. ECF No. 1 at ¶ 1 (alleging that Plaintiff resides in Utah); *see also Basba v. Xuejie*, No. 8:19–cv–380–PX, 2021 WL 242495, at *3 (D. Md. Jan. 25, 2021) (holding that, in the case of economic torts, injuries occur "where the injured party resides" (quoting *Simone v. VSL Pharms., Inc.*, No. TDC–15–1356, 2017 WL 66323, at *2 (D. Md. Jan. 5, 2017))). And so, Plaintiff cannot avail himself of Section 6–103(b)(3) to establish personal jurisdiction over the non-Maryland Defendants.

Plaintiff's reliance upon Sections 6–103(b)(1) and (b)(4) of the Maryland long-arm statute to establish personal jurisdiction over the non-Maryland Defendants is also misplaced. To

establish personal jurisdiction under these provisions, Plaintiff must show that the non-Maryland Defendants either: (1) transact business or perform a work or service in the State of Maryland, or (2) regularly conduct or solicit business, engage in any other persistent course of conduct in the State of Maryland, or derive substantial revenue from goods, food, services, or manufactured products used or consumed in the State. Md. Code Ann., Cts. & Jud. Proc. § 6–103(b)(1) and (4). But, again there are no factual allegations in the complaint to show that the non-Maryland Defendants transact business or perform work or services in Maryland. *See generally*, ECF No. 1. The complaint is similarly devoid of facts to show that the non-Maryland Defendants regularly conduct or solicit business, engage in other persistent course of conduct in Maryland, or derive substantial revenue from goods, food, services, or manufactured products used or consumed in the State. *Id.* Given this, Plaintiff has not shown that the Court may exercise personal jurisdiction over the non-Maryland Defendants under the Maryland long-arm statute. And so, the Court GRANTS the Defendants' motion to dismiss the non-Maryland Defendants and DISMISSES Defendants Campbell, Bergvinson, He and DeLorenzo from this action. Fed. R Civ. P. 12(b)(2).[3]

### B. Plaintiff States Plausible Conversion Claims Regarding The SaucerSwap Website, Social Media Accounts And Trade Name

Turning to the merits of Plaintiff's conversion claims, the Court is satisfied that the complaint alleges plausible claims for conversion under Utah law with regards to the SaucerSwap website, social media accounts, trade name and logo. The Court observes as an initial matter that the parties agree that Utah law applies to Plaintiff's conversion claim, because Plaintiff resides in Utah and any tort injuries that he suffered occurred in that state. ECF Nos. 22-1 at 5-6 and 23 at 2n1; *Wells v. Liddy*, 186 F.3d 505, 521 (4th Cir. 1999) ("A federal court sitting in diversity must apply the choice-of-law rules from the forum state."); *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 511 (4th Cir. 1986) (explaining Maryland's choice of law jurisprudence for tort claims observes the rule of *lex loci delicti*, applying the substantive law of the state in which the injury resulting from the alleged tort occurred.). And so, the

---

[3] Because the Court concludes that Plaintiff fails to show that the Court may exercise personal jurisdiction over the non-Maryland Defendants under Maryland's long-arm statute, the Court does not address whether exercising such jurisdiction comports with the Due Process Clause under the Fourteenth Amendment.

Court looks to Utah law to determine whether Plaintiff states a plausible claim for conversion in the complaint.  *Id.*

Under Utah law, "[a] conversion is an act of willful interference with a chattel, done without lawful justification by which the person entitled thereto is deprived of its use and possession."  *Allred v. Hinkley*, 328 P.2d 726, 728 (Utah 1958); *see also Phillips v. Utah State Credit Union*, 811 P.2d 174, 179 (Utah 1991).  Given this, Utah courts have held that "a party alleging conversion must show that he or she is entitled to *immediate* possession of the property at the time of the alleged conversion."  *Fibro Trust*, 974 P.2d at 296 (citing *Benton v. Utah Div. of State Lands & Forestry*, 709 P.2d 362, 365 (Utah 1985) (emphasis in original)).

Relevant to this dispute, the United States District Court for the District of Utah has held that Utah law does not allow a conversion claim for intangible intellectual property.  *Margae*, 620 F. Supp. at 1287.  The district court has held, however, that web pages are tangible property that can be the subject of a conversion claim under Utah law.  *Id.* at 1287–88.  In addition, the Restatement (Second) of Torts recognizes that a conversion claim can be brought for certain kinds of intangible property that is "customarily merged in a document."  Restatement (Second) of Torts § 242(2).  And so, Utah courts have held that a conversion action can extend to intangible property, if that intangible property is customarily merged with a document, such as a valid stock certificate, promissory note, or bond.  *Margae*, 620 F. Supp. 2d at 1287; *see also Simone*, 2017 WL 66323, at *9 ("An action for conversion therefore generally applies only to tangible property, extending to intangible property only when that tangible property is merged with a document, such as a valid stock certificate, promissory note, or bond.") (internal quotation marks and citation omitted).

Applying these standards here, the Court is satisfied that Plaintiff has alleged plausible conversion claims related to the SaucerSwap website, social media accounts, trade name and logo in this case.  Plaintiff alleges in the complaint that the Defendants registered the "SaucerSwap" trade name with the Maryland Department of Assessments and Taxation without his knowledge and attempted to lock him out of the SaucerSwap Twitter, Instagram, and Discord accounts, and the SaucerSwap website.  ECF No. 1 at ¶¶ 29, 31.  Plaintiff also alleges that the Defendants redirected the SaucerSwap website to a new URL, which contains certain animations that he paid for, in addition to the proprietary business plan and certain intellectual property that

he developed. *Id.* at ¶¶ 33–34. And so, the Court reads the complaint to assert conversion claims related to the following property: (1) the SaucerSwap website; (2) the SaucerSwap Twitter, Instagram and Discord accounts; (3) the SaucerSwap trade name; (4) the SaucerSwap logo; and (5) other unspecified intellectual property.

While Defendants correctly argue that, generally, Plaintiff cannot assert a conversion claim under Utah law for intangible intellectual property, Plaintiff is on firm footing in arguing that the SaucerSwap website and Twitter, Instagram and Discord social media accounts constitute tangible property that can be the subject of a conversion claim. As discussed above, the United States District Court for the District of Utah has held that web pages are tangible property that can be the subject of a conversion claim under Utah law. *Margae*, 620 F. Supp. 2d at 1287–88 (holding that it is possible to take "virtual possession of web pages, thereby depriving [the other party of] the right to control the use of the media" and that [a web page] has the characteristics of tangible property and can be converted."). Given this, Plaintiff's conversion claim related to the SaucerSwap website is plausible under Utah law. For similar reasons, Plaintiff's conversion claims related to the SaucerSwap Twitter, Instagram and Discord social media accounts are also plausible under Utah law. *Id.* And so, the Court declines to dismiss these claims.

While a closer question, the Court is also satisfied that Plaintiff states plausible conversion claims related to the SaucerSwap trade name and logo. As discussed above, the United States District Court for the District of Utah and the Restatement (Second) of Torts both recognize that a conversion claim can be brought for intangible property if that property is "customarily merged in a document." *See* Restatement (Second) of Torts § 242(2); *Margae*, 620 F. Supp. 2d at 1287. And so, Plaintiff can assert a conversion claim related to intangible property, like the SaucerSwap trade name and logo, if this intangible property is customarily merged with a document, such as a valid stock certificate, promissory note, or bond. *Margae*, 620 F. Supp. 2d at 1287; *see also Simone*, 2017 WL 66323, at *9 ("An action for conversion therefore generally applies only to tangible property, extending to intangible property only when that tangible property is merged with a document, such as a valid stock certificate, promissory note, or bond.") (internal quotation marks and citation omitted).

Plaintiff argues here that the Defendants' registration of the SaucerSwap trade name with the Maryland State Department of Assessments and Taxation shows that this trade name is customarily embodied in a writing. ECF No. 23 at 5. In doing so, Plaintiff has by no means proven his conversion claim with regards to the SaucerSwap trade name. But Plaintiff has shown that he *could* assert a conversion claim for this property, if the SaucerSwap trade name is customarily merged with a document. Plaintiff similarly argues that he can assert a conversion claim related to the SaucerSwap logo, because, among other things, "the logo is depicted in several written forms on the Defendants' website." *Id.* To the extent that Plaintiff contends that the SaucerSwap logo is also customarily merged with a document, the Court agrees that Plaintiff alleges a plausible conversion claim related to this logo.[4] *See Nemet Chevrolet*, 591 F.3d at 253 (When evaluating the sufficiency of a plaintiff's claims under Fed. R. Civ. P. 12(b)(6), the Court accepts the factual allegations in the complaint as true and construes them in the light most favorable to the plaintiff.). Because Plaintiff asserts plausible conversion claims related to the SaucerSwap trade name and logo in the complaint, the Court also declines to dismiss these claims.

Plaintiff's conversion claim related to "other intellectual property" that he created and developed, is, however, more problematic. As the Defendants correctly argue, Plaintiff cannot assert a conversion claim related to "a property interest in the ideas and concepts that were used to develop the products," because this would be "a claim for conversion of intangible intellectual property which is not allowed under Utah law." *See Soundvision Tech., LLC v. Templeton Grp, Ltd.*, 929 F. Supp. 2d 1174, 1197 (D. Utah 2013). And so, the Court DISMISSES Plaintiff's conversion claim related to "other intellectual property."

## V.     CONCLUSION

In sum, Plaintiff has not shown that the Court possesses personal jurisdiction over the non-Maryland Defendants in this action. A careful reading of the complaint shows,

---

[4] Plaintiff provides no legal support for his argument that depicting a logo on a website is sufficient to show that the logo is customarily merged with a document. ECF No. 23 at 5–6. Plaintiff's reliance upon this Court's decision in *Alliance for Telecommunications Industry Solutions, Inc. v. Hall*, No. CCB–05–440, 2007 WL 3224589, at *1 (D. Md. Sept. 27, 2007), also appears to be misplaced. In that case, the Court addressed a conversion claim involving certain written invoices that contained a logo. *Id.* And so, the alleged conversion involved the taking of the tangible property that contained a logo, rather than converting the logo itself. *Id.*

however, that Plaintiff states plausible claims for conversion with regards to the SaucerSwap website, social media accounts, trade name and logo.  But, Plaintiff fails to state a plausible conversion claim related to the other "intellectual property" that he created and developed.

And so, the Court:

(1) **GRANTS-in-PART** and **DENIES-in-PART** the Defendants' motion to dismiss;

(2) **DISMISSES** Defendants Campbell, Bergvinson, He and DeLorenzo from this action; and

(3) **DISMISSES** Plaintiff's conversion claims related to Plaintiff's "other intellectual property."

A separate Order shall issue.

**IT IS SO ORDERED.**

s/Lydia Kay Griggsby
LYDIA KAY GRIGGSBY
United States District Judge